IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:24-cv-434

| | |
|---|---|
| RYAN THOMPSON, *individually and on behalf of all others similarly situated*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ALLY FINANCIAL, INC., )<br><br>Defendants. ) | **CLASS ACTION COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Ryan Thompson ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint (the "Complaint") against Defendant Ally Financial, Inc. ("Defendant" or "Ally") and alleges as follows:

## I. **INTRODUCTION**.

1. Servicemembers of the United States Military have made many sacrifices for our Nation, one of which is financial. Frequently, answering the call of duty not only requires leaving behind loved ones and the comforts of home, but also employment and financial security. Accordingly, the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.*, was enacted to reconcile this sacrifice by "[enabling servicemembers] to devote their entire energy to defense needs of the Nation." 50 U.S.C. § 3902(1).

2. In part, the SCRA generally guarantees that all servicemembers can terminate a residential or motor vehicle lease, without paying early termination charges or penalties, if they entered into the lease:

   a. Prior to entering active duty, and then been called onto active duty for 180 days or longer; or

   b. During active duty, and then received orders for:

  i. Permanent Change of Station (PCS) from a location inside the continental United States (CONUS) to a location outside the continental United States (OCONUS), or a PCS from a location OCONUS to any new location, or

  ii. deployment with a military or uniformed unit or in support of a military or uniformed operation for 180 days or longer.

 *See* 50 U.S.C. § 3955.

3. Termination of a lease under the SCRA is made by the servicemember delivering written notice of such termination, and a copy of his/her military orders, to the lessor. 50 U.S.C. § 3955(c). And in the case of a motor vehicle lease, servicemember must also return the motor vehicle to lessor no later than 15 days after the date of the delivery of written notice. *Id*.

4. Delivery of written termination notice may be accomplished by (A) hand delivery, (B) private business carrier, (C) mail through the USPS, and by (D) electronic means including email to lessor, posting or uploading to a designated website, or any other electronic means reasonably calculated to ensure actual receipt of material by lessor. 50 U.S.C. § 3955(c)(2).

5. Defendant, one of the largest auto-financing companies in the United States, markets themselves as being "in the business of putting people first."[1]).

6. Both by its own words and by law, Defendant is obligated to "show up for [its] customers when it comes to their financial needs" and to abide by the terms of the SCRA. *Id*.; *see also* 50 U.S.C. §§ 3902; 3955.

7. However, Defendant knowingly breached the duties it owes to servicemembers when it refused to permit Plaintiff to terminate his motor vehicle lease, despite his proper

---

[1] *See* Ally Financial, *About Us: Who We Are*, https://www.ally.com/about/company-structure (last visited Mar. 13, 2023).

submission of the appropriate documentation, including his deployment orders specifically stating that Plaintiff is authorized to be released from any and all current contracts, leases, payment plans, and court appearances. *See generally* 50 U.S.C. §§ 3955 (termination of residential or motor vehicle leases); 3956 (termination of certain consumer contracts); 3931 (protection against default judgments); and 3932 (stay of proceedings).[2]

## II. PARTIES.

8. Plaintiff Ryan Thompson is a citizen and resident of North Carolina. At all relevant times, Plaintiff lived at 113 Penny Lane in Holly Ridge, Onslow County, North Carolina 28445.

9. Plaintiff is a Staff Sergeant serving in the United States Marine Corps for over ten (10) years.

10. On or around January 7, 2024, Plaintiff deployed to an undisclosed location within the Middle East in support of military operation. (*See* Plaintiff's Final Deployment Notification, attached as Exhibit A).

11. Plaintiff is a "servicemember" as defined by the SCRA. *See* 50 U.S.C. § 3911(1) (citing 10 U.S.C. § 101(a)(5)).

12. Defendant Ally Financial, Inc., is a bank holding company organized under the laws of Delaware with its headquarters and principal place of business located at 500 Woodward Avenue, 10th Floor, in Detroit, Michigan 48226.

13. Defendant is registered to do business and does conduct substantial business in North Carolina, including the "Ally Charlotte Center," its "corporate center" located at 601 South

---

[2] One express purpose of the SCRA is protection of servicemembers through "the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect [their] civil rights…during their military service." 50 U.S.C. § 3902(2).

Tryon Street, Suite 100, in Charlotte, North Carolina 28202.[3] Defendant's registered office is located at 160 Mine Lake Court, Suite 200, in Raleigh, North Carolina 27615.

14. As stated *supra*, Plaintiff files this Class Action Complaint in his individual capacity and on behalf of themselves and all others similarly situated. When a motion is filed to certify the proposed class, Plaintiff (and any other class members who may be named as class representatives during the pendency of this action) will represent the class identified below.

### III. JURISDICTION AND VENUE.

15. This Court has jurisdiction and venue over the Parties and this Action, which arises out of acts and omissions of the Defendants done, in whole or in part, in Onslow County, North Carolina against residents of North Carolina.

16. ***Subject Matter Jurisdiction***: This action arises, in part, under the laws of the United States, including the SCRA, 50 U.S.C. §§ 3901, *et seq*. Accordingly, Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

17. ***Personal Jurisdiction***: This Court has personal jurisdiction over Defendant because Defendant is registered to conduct and does regularly conduct business within the State of North Carolina, including in Onslow County; and manages and operates businesses (named herein) registered in the State of North Carolina.

18. ***Venue***: Venue is proper because the present action is brought where the acts and omissions of the individual Defendant occurred, and where Plaintiff and a large number of putative class members reside.

### IV. FACTUAL ALLEGATIONS.

19. The foregoing allegations are realleged and incorporated herein by reference.

---

[3] *See* Ally Financial, *About Us: Our Company - Locations*, https://www.ally.com/about/locations (last visited May 20, 2024).

20. At all times relevant to this action, Plaintiff has been a servicemember in the United States Marine Corps.

21. Plaintiff has been in active duty with the United States Marine Corps since 2014 and deployed at Camp Lejeune, North Carolina.

22. Since December 2021, Defendant has provided financial services to Plaintiff that are protected by the SCRA; specifically, a motor vehicle lease (the "Lease").

23. On or around December 18, 2021, Plaintiff entered into a motor vehicle lease agreement with Defendant (the "Agreement"), with a total value of $26,879.95 (*See* Plaintiff's Lease Agreement, attached as Exhibit B).

24. Upon entering into the Agreement, Plaintiff made a payment of $4,996.61 and thereafter has completed approximately twenty-four (24) timely monthly payments of $565.43.

25. On December 7, 2023, Plaintiff received his first notice from the United States Marine Corps stating that, on or around January 15, 2024, Plaintiff's company would execute orders to deploy ("Deployment Orders") to an undisclosed location in support of a military operation for approximately six (6) months. (*See* Plaintiff's Initial Deployment Notification, attached as Exhibit C).

26. Under the SCRA, the "lease of a motor vehicle used or intended to be used by a servicemember or [their] dependents for personal or business transportation" may be terminated under the SCRA when "the servicemember, while in military service, executes the lease and thereafter receives military orders…to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 180 days." 50 U.S.C. § 3955(b)(2)(B)(ii).

27. Plaintiff sought to enforce his rights under the SCRA to terminate the Agreement pursuant to the protection of "deployment with a military or uniformed unit or in support of a military or uniformed operation for 180 days or longer." *See* 50 U.S.C. § 3955.

28. Accordingly, pursuant to the SCRA, the Deployment Orders further stated that Plaintiff was "authorized to be released from any/all current contracts, leases, payment plans, and court appearances." (*See* Ex. B).

29. Accordingly, Plaintiff submitted to Defendant a written notice of termination under the SCRA with his Deployment Orders attached on December 18, 2023, and Defendant acknowledged receipt of the documents on December 19.

30. On December 28, Plaintiff inquired as to the status of his termination, and Defendant responded that his request was not approved due to the omission of a deployment location[4] and a typographical error in Plaintiff's deployment orders. (*See Id*. (stating that Plaintiff would "execute orders to deploy on or about 15 January 2023," instead of "2024")).

31. Accordingly, Plaintiff requested and obtained new orders that: (a) stated Plaintiff would deploy on or around January 7, <u>2024</u> for approximately six months; and (b) included a generalized deployment location. (*See* Ex. A). Plaintiff submitted the new orders to Defendant via email on January 2, 2024.

32. Just like the original orders, Plaintiff's updated Deployment Orders expressly stated that Plaintiff was "authorized to be released from any/all current contracts, leases, payment plans, and court appearances." (*See Id*.).

---

[4] It should be noted that Plaintiff serves as a part of the U.S. Marine's Special Operations Command—a position that often necessarily precludes the disclosure of specific information, particularly regarding a servicemember's deployment location, as expressly stated in the updated orders received by Plaintiff on January 2. (*See* Ex. A ("Due to operational security, a specific location cannot be disclosed.").

33. Nonetheless, on January 17, 2024, Defendant gave Plaintiff written notice stating that it was "unable to approve [his] request" for SCRA protection, claiming that the "military service date predates the contract date," and that it never received Plaintiff's orders. (*See* Defendant's Denied Request Notice, attached as <u>Exhibit D</u>).

34. Plaintiff promptly confirmed that the updated orders he sent included the correct documentation and information—that Plaintiff *specifically* was required to "execute orders to deploy on or about 7 January 2024…to an undisclosed location within the Middle East" (because "[d]ue to operational security, a specific location cannot be disclosed"); that he "will be deployed for a period of approximately six months, plus 30 days[;]" and that he was "authorized to be released from any/all current contracts, leases, payment plans, and court appearances." (<u>Ex. A</u>).

35. Defendant systematically deprived eligible servicemembers of SCRA benefits. Even after eligible servicemembers requested SCRA benefits and provided sufficient documentation to qualify for benefits, Defendant denied benefits under the guise of needing additional documentation. Servicemembers entering active duty, already faced with intensive stress and time pressure, often are unable to overcome these additional obstacles, resulting in their denial of SCRA benefits and payment of excess interest and fees.

36. Defendant has systematically denied SCRA benefits to qualified servicemembers by applying uniform procedures which made it difficult or impossible for qualified servicemembers to obtain SCRA benefits.

37. Throughout this entire process with Defendant during December 2023 and January 2024, Plaintiff made numerous phone calls to Defendant attempting to resolve the issue. He repeatedly asked to speak with a supervisor but was told they were unavailable each time

and that there was no one else he could contact. Therefore, on January 5, Plaintiff requested copies of the audio recordings and/or transcripts of his numerous phone conversations with Defendant but was denied access to them.

38. As a result of Defendant's refusal to honor Plaintiff's proper request for termination of his Lease as required by the SCRA, Plaintiff is still making monthly payments of $565.43 and at present has paid three more months than what he should have paid pursuant to the SCRA and has incurred additional interest and loss of the benefit of use of these funds elsewhere.

## V. CLASS ACTION ALLEGATIONS.

39. The foregoing allegations are realleged and incorporated herein by reference.

40. As a result of the foregoing, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure individually and on behalf the Proposed Nationwide Class:

> All United States Military Servicemembers who: (1) properly requested; and (2) were denied termination of a motor vehicle lease; (3) by Defendant Ally Financial, Inc.; (4) while protected under the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901, *et seq*.

41. Excluded from the Proposed Class are: (a) any Judge or Magistrate presiding over this action and their family members; (b) Defendant and any entity in which Defendant has a controlling interest, including its legal representatives, assigns, and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

42. *Numerosity*: Upon information and belief, Defendant has uniformly engaged in a pattern or practice of denying requests properly made under the SCRA by servicemembers, including Plaintiff, during the period preceding the commencement of this action such that joinder of all class members would be impractical. Accordingly, although Plaintiff is unable to provide a specific number of members of the Proposed Class because that information is solely in the possession of Defendant, the exact number of class members (as well as

their names and addresses) can be readily ascertained through review of Defendant's business records. Moreover, upon information and belief, the Proposed Class includes at least one hundred individuals geographically dispersed throughout the United States and overseas.

43. ***Commonality*:** Upon information and belief, Defendant operates pursuant to a singular, standard system of policies and procedures resulting in violations of the SCRA, and every member of the Proposed Class is subject to these policies and procedures regarding their respective leases. Therefore, because Defendant has a pattern, practice, and policy of mishandling its clients and failing to follow the law under the SCRA, common questions of law and fact predominate over any individual issues that may be presented.

44. ***Typicality*:** As stated *supra*, upon information and belief, Defendant operates pursuant to a set of standard procedures resulting in violations of the SCRA such that Plaintiff's claims, and the related facts and legal theories, are substantially identical to those of the Proposed Class because all such claims arise out of the same conduct of Defendant. Thus, Plaintiff's claims are typical of the claims of the Proposed Class.

45. ***Predominance and Superiority*:** The same questions of law and fact are common to the Proposed Class and predominate over questions affecting only individual members; and thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the class is impracticable. If individual class members were made to bring separate actions, this Court (or courts throughout North Carolina and the United States) would be confronted with a gross multiplicity of lawsuits burdening the judicial system and creating the risk of inconsistent rulings and contradictory judgments, as well as causing excessive delay and

expense to all parties. In contrast, this class action presents far fewer management difficulties and provides unitary adjudication, economies of scale, and comprehensive supervision by this Court.

46. *Adequate Representation*: Plaintiff is an adequate representative of the Proposed Class. He has no antagonistic or conflicting claims with any other class member and has retained counsel experienced in the prosecution of complex class actions, specifically including consumer class actions. Neither Plaintiff nor his counsel have any interest that might cause them to not vigorously pursue this action. Plaintiff is aware of the responsibilities to the Proposed Class and has accepted such responsibilities.

## VI. CLAIMS FOR RELIEF.

### FIRST CAUSE OF ACTION
### THE SERVICEMEMBERS CIVIL RELIEF ACT,
### 50 U.S.C. §§ 3901, *et seq*.

47. The foregoing allegations are realleged and incorporated herein by reference.

48. Plaintiff and the Proposed Class have and can assert a private right of action for violations of the SCRA. *See* 50 U.S.C. § 4042(a).

49. The SCRA, *inter alia*, guarantees termination of all leases, including motor vehicle leases, for servicemembers deployed for 180 days or more. *See generally* 50 U.S.C. § 3955.

50. Therefore, Defendant violated the SCRA by failing to properly apply its provisions to the accounts of Plaintiff and other class members; and by requiring servicemembers, including Plaintiff, to jump through unlawful hoops to obtain the benefits they are entitled to under the SCRA.

51. The SCRA allows servicemembers flexibility in proving active-duty status, and Defendant repeatedly violates this requirement by imposing onerous documentation requirements

upon servicemembers, including Plaintiff, and then denying benefits by claiming insufficiency of documentation that patently satisfies the SCRA. 50 U.S.C. § 3955(c).

52. In general, a servicemember need only provide his or her notice of termination and copy of deployment orders to the lessor by hand delivery, mail, or email. 50 U.S.C. § 3955(c).Plaintiff satisfied the notice requirements under § 3955(c) at least twice with his submissions to Defendant.

53. Even after Plaintiff properly requested termination under the SCRA and submitted orders meeting the documentation requirements of the SCRA, Defendant responded by sending him a form letter requesting further documentation unnecessary for approving his request.

54. Upon information and belief, this is a common practice for Defendant—sending this form letter to servicemembers who plainly already qualify for benefits misleads servicemembers about the SCRA's requirements and discourages them from taking advantage of their legal rights under the SCRA at all, resulting in the overpayment of thousands of dollars on leases that should have been terminated without incident.

55. Moreover, Defendant's request for additional documentation from servicemembers is <u>not</u> prompt, and this delay creates another unlawful barrier to benefits, particularly since servicemembers often receive their orders mere weeks ahead of time; and once they are on active duty or deployment, they cannot readily provide this further documentation.

56. Defendant—a well-established national financial services provider—was acutely aware of the provisions and requirements of the SCRA. Thus, it either knew, reasonably should have known, or recklessly disregarded its failure to comply with the SCRA and, as a result, advanced the exploitative and deceptive nature of its policies, procedures, and decisions.

57. The SCRA specifically includes the right to bring a class action to enforce benefits; therefore, to the extent Defendant seeks to interfere with the rights of servicemembers, including Plaintiff and the Proposed Class, to bring a class action, it is in violation of the SCRA. *See* 50 U.S.C. § 4042(a)(3) ("Any person aggrieved by a violation of this chapter may in a civil action…be a representative party on behalf of members of a class or be a member of a class[,] notwithstanding any previous agreement to the contrary.").

58. As a direct and proximate result of Defendant's violations of the SCRA, Plaintiff and the Proposed Class incurred damages that, for Plaintiff and many class members, is ongoing. As a result, Plaintiff and the class members seek all available relief under the SCRA, including but not limited to monetary damages; costs of the action, including a reasonable attorney fee; and equitable or declaratory relief, as appropriate. 50 U.S.C. § 4042.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**

59. The foregoing allegations are realleged and incorporated herein by reference.

60. Beyond the express requirements of the SCRA, Plaintiff's Lease Agreement with Defendant includes as a term that the lessee may "end this lease anytime." (*See* Ex. C, p. 3 ¶ 28 ("Early End")).

61. In conjunction with the requirements promulgated by the SCRA, the "Early End" provision was an enforceable term of Defendant's lease agreements with Plaintiff and members of the Proposed Class.

62. Due to Defendant's willful breach of these lease agreements, Plaintiff and the Proposed Class have been forced to maintain their leases with Defendant and have continuously incurred additional monetary harm to their detriment and to Defendant's benefit.

63. By not allowing Plaintiff to terminate his lease pursuant to the SCRA and not honoring its promises, Defendant violated the SCRA and the terms of the lease agreement, thereby breaching its contacts with Plaintiff and the Proposed Class.

64. As a direct and proximate result of Defendant's breach of contract as described herein, Plaintiff and the Proposed Class have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

65. The foregoing allegations are realleged and incorporated herein by reference.

66. Defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract.

67. Plaintiff and the Proposed Class had justified expectations that Defendant would provide them all statutory and contractual benefits, comply with all applicable federal and state statutes, create and maintain a standard SCRA compliance program, and honestly and forthrightly provide them with information needed to understand and enforce their rights.

68. Defendant breached its duty to Plaintiff and the Proposed Class by violating the SCRA and the terms of its lease agreement with Plaintiff by not allowing Plaintiff to terminate his lease with them, even after submitting deployment orders and documentation.

69. As a direct and proximate result of Defendant's breach of its duty of good faith and fair dealing as described herein, Plaintiff and the Proposed Class have been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### THE FEDERAL DECLARATORY JUDGMENT ACT,
### 28 U.S.C. § 2201, *et seq.*

70. The foregoing allegations are hereby realleged and incorporated herein by reference.

71. The Federal Declaratory Judgment Act gives this Court the discretion to entertain a declaratory judgment action "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201.

72. Accordingly, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought[;]" and has the power to grant "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. §§ 2201-2202.

73. Here, the Parties have a genuine dispute over whether Defendant's actions violate the SCRA.

74. Plaintiff and the Proposed Class seek declaratory and injunctive relief establishing the requirements of the SCRA have always applied to Defendant's conduct and enjoining Defendant's future violations of that statute.

75. As such, Plaintiff seeks a declaratory judgment that (1) Defendant's refusal to permit Plaintiff to terminate his automobile lease pursuant to the SCRA; and (2) the lease payments charged and collected by Defendant as a result if such refusal were unlawful and willful violations of the SCRA.

76. Plaintiff further seeks to permanently enjoin Defendants from illegally refusing servicemembers' rights to terminate their automobile leases and then charging and collecting lease payments in direct contravention of the SCRA.

### VII.   **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff, on behalf of himself and all similarly situated, pray for the following relief:

- **a.** Certify this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as class representative and appointing the undersigned as Class Counsel;

b. Adjudge that Defendant charged Plaintiff and the Proposed Class illegal amounts in lease payments;

c. Adjudge that Defendant has violated and continues to violate the Servicemembers Civil Relief Act, and all other statutes and rules so applicable;

d. Award Plaintiff and the Proposed Class all statutory, compensatory, and consequential damages so allowable;

e. Require Defendant to pay punitive damages on any count so allowable;

f. Award Plaintiff and the Proposed Class pre- and post-judgment interest at the highest legal rate provided by law;

g. Award declaratory and injunctive relief prohibiting Defendant from continuing to require Plaintiff and the Proposed Class to maintain their automobile leases in violation of the Servicemembers Civil Relief Act, and thereby continuing to charge and collect lease payments in violation of the law;

h. Award attorneys' fees and costs to Plaintiff and the Proposed Class;

i. Tax the costs of this action be to Defendant;

j. Grant to Plaintiff and the Proposed Class a trial by jury on all issues so triable; and

k. Award Plaintiff and the Proposed Class all such other and further relief as the Court deems just and proper.

Respectfully submitted, this is the 20th day of May, 2024.

**MAGINNIS HOWARD**

*/s/ Karl S. Gwaltney*
KARL S. GWALTNEY
N.C. State Bar No. 45118
IAN E. VANCE
N.C. State Bar No. 60056
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:  919-526-0450
Fax:  919-882-8763
kgwaltney@carolinalaw.com
ivance@carolinalaw.com
*Counsel for Plaintiff*